IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Zachary Barton and Ethan Forness<br>*Individually and on behalf of all others*<br>*similarly situated*<br><br>               Plaintiffs,<br><br>    *v.*<br><br>Lancaster Wings, Inc., Lancaster Wings<br>West LLC, Lancaster Wings West II<br>LLC, Lancaster Wings West III LLC,<br>and Larry Tipton<br>               Defendants. | Case No.<br><br><br>**FLSA Collective Action**<br><br>1.  **THE FAIR LABOR STANDARDS ACT (29**<br>    **U.S.C. §§ 201-219, C.F.R. § 531.35);**<br><br>    **FRCP 23 Class Action (State-Law Claim)**<br><br>2.  **Article II, §34a of the Ohio Constitution**<br><br>**DEMAND FOR JURY TRIAL** |

Now come Plaintiffs Zachary Barton and Ethan Forness ("Plaintiffs"), on behalf of themselves and all other persons similarly situated, and for their Complaint against Defendants Lancaster Wings, Inc., Lancaster Wings West LLC, Lancaster Wings West II LLC, Lancaster Wings West III LLC and Larry Tipton (collectively "Defendants") state and allege as follows:

### Nature of Plaintiff's Claims

1.     This lawsuit arises under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §, *et seq.*, for Defendants' failure to pay Plaintiffs and other similarly-situated tipped employees all earned minimum wages.

2.     As detailed herein, Defendants employed a uniform policy whereby Plaintiffs and the members of the Classes (defined below) were required to regularly work for the benefit of the

1

Defendants while their hours were not being properly paid, classified, or recorded.

3.     As explained herein, under applicable employment laws, Plaintiffs and the members of the Classes are entitled to minimum wage for all hours worked and overtime for hours over 40 in a week. Due to the Defendants' policy of requiring them to work while they were off the clock, and requiring them to do non-tip related work on tip-wages, Plaintiffs and members of the Classes were not paid for the time they worked. As a result, Plaintiffs and members of the Classes were illegally undercompensated for their work.

4.     Plaintiffs bring this case against the Defendants for willfully violating the Fair Labor Standards Act ("FLSA") and the Ohio Constitution.  Plaintiffs bring the FLSA as a collective action to seek past-due wages and an equivalent amount in liquidated damages for putative class members who opt in. Plaintiffs also bring a supplemental state-law claim to recover broader remedies unavailable in FLSA actions. It is well-settled in this jurisdiction that Rule 23 class actions can be combined (i.e., coexist) with collective actions brought under the FLSA.

5.     Defendants own and operate franchised Buffalo Wild Wings restaurants in Ohio and Arizona.  Only the Ohio restaurants are the subject of this lawsuit.

6.     Defendants have a policy or practice of paying their tipped employees at Buffalo Wild Wings, including servers and bartenders, sub-minimum hourly wages under the tip-credit provisions of the FLSA ("Tip-Credit Employees").

7.     As detailed herein, Defendants employed a uniform policy whereby Plaintiffs and the putative class members were required to regularly work for the benefit of Corporate Defendants while the employee's hours were not being recorded.

8.     Under the tip-credit provisions of the FLSA, an employer of tipped employees may, under certain circumstances, pay those employees less than the minimum hourly wage and take a "tip

2

credit" against its minimum wage obligations. But an employer is *not* permitted to take a tip credit against its minimum wage obligations in any of the following circumstances: (1) when it fails to inform tipped employees of the provisions of the tip-credit subsection of the FLSA; (2) when it requires its tipped employees to perform non-tipped work that is *unrelated* to the employees' tipped occupation (i.e., "dual jobs"); (3) when it requires its tipped employees to perform non-tipped work that, although related to the employees' tipped occupation, exceeds 20 percent of the employees' time worked during a workweek; or (4) when it requires tipped employees to return a portion of their tips to the employer. *See, e.g.*, 29 U.S.C. § 203(m) (the tip credit provision "shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection"); *Driver v. AppleIllinois, LLC*, 739 F.3d 1073, 1075 (7th Cir. 2014) (explaining that when tipped employees perform "non-tipped duties" that "are unrelated to their tipped duties . . . such as, in the case of restaurant servers, washing dishes, preparing food, mopping the floor, or cleaning bathrooms, they are entitled to the full minimum wage for the time they spend at that work"); *Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 880 (8th Cir. 2011) ("employees who spend 'substantial time' (defined as more than 20 percent) performing related but non-tipped duties should be paid at the full minimum wage for that time"); *Vankar Enter., Inc.*, 579 F. Supp. 2d 804, 810 (W.D. Tex. 2008) (defendant not permitted to take the FLSA tip credit when it took plaintiffs' tips to pay for shortages and unpaid tabs).

9. Defendants violated the FLSA by failing to inform their Tip-Credit Employees of the tip-credit provisions of the FLSA.

10. Defendants violated the FLSA by enforcing a policy or practice of paying their Tip-Credit Employees sub-minimum, tip-credit wages even when they required those employees to perform non-tipped work that is *unrelated* to their tipped occupation (i.e., "dual jobs"), such as

cleaning bathrooms, sweeping, mopping, or deck-scrubbing floors, washing dishes, rolling silverware, and cleaning the restaurant.

11.     Defendants violated the FLSA by enforcing a policy or practice of requiring Tip-Credit Employees to perform non-tipped work that, even if it was related to their tipped occupation, exceeded 20 percent of their time worked in one or more individual workweeks.

12.     Finally, Defendants violated the FLSA by unlawfully requiring Tip-Credit Employees to return a portion of their tips to the restaurants.

## JURISDICTION AND VENUE

13.     This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 16(b) of the FLSA, 29 U.S.C. § 216(b).  This Court also has federal jurisdiction over this action under the Class Action Fairness Act of 2005 ("CAFA") because this is a class action in which: (1) there are more than 100 class members in Plaintiffs' proposed classes; (2) Plaintiffs and members of the proposed classes have different citizenships from Defendants (i.e., the parties are minimally diverse); and (3) the claims of the proposed class members exceed $5,000,000 in the aggregate.  See *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S.Ct. 547, 552 (2014), citing 28 U.S.C. 1332(d)(1)(2), (5)(B).  In addition, this Court has supplemental jurisdiction over Plaintiffs' state-law claims because those claims derive from the same common conduct that led to violations of the FLSA; that is, the FLSA and Ohio claims all derive from the same common nucleus of operative facts.  28 U.S.C. § 1367.

14.     Jurisdiction and venue as to Defendants are proper in this Court pursuant to 28 U.S.C. §§ 1331, 1332, 1391 and 216(b) of the FLSA, 29 U.S.C. § 216(b).

15.     Pursuant to Local Rule 3.8(a), this action is properly assigned to the Eastern Division of this Court.

### Collective Action Allegations

16.     Pursuant to 29 U.S.C. § 216(b), Plaintiffs bring this action on behalf of themselves

and all other similarly-situated employees. The other similarly-situated employees are defined as follows:

> All current and former servers and bartenders who worked at one of the Defendants' owned Buffalo Wild Wings restaurant located in the state of Ohio at any time during the applicable limitations period covered by this Complaint (*i.e.*, two years prior to filing for FLSA violations, and three years prior to filing for willful FLSA violations) up to and including the date of final judgment in this matter.

17. Excluded from this definition are the Defendants, the Court and its staff, and all counsel, as well as immediate family members of the same. Moreover, Plaintiffs reserve the right to amend this definition based on discovery or legal developments.

18. Defendants are aware, or should have been aware, that federal law requires them to pay Tip-Credit Employees full minimum wage when they: (1) fail to inform Tip-Credit Employees of the tip-credit provisions of the FLSA; (2) require Tip-Credit Employees to perform non-tipped work that is (i) *unrelated* to their tipped occupation, or (ii) exceeds 20 percent of their time worked during individual work weeks; or (3) require Tip-Credit Employees to return a portion of their tips to the restaurants to cover the cost of customer walkouts.

19. Plaintiffs are similarly situated to Defendants' other Tip-Credit Employees because those employees were also paid sub-minimum hourly wages while they were subject to Defendants' illegal policy or practice of: (1) failing to inform them of the tip-credit provisions of the FLSA; (2) requiring them to perform non-tipped work that is (i) *unrelated* to their tipped occupation, or (ii) exceeds 20 percent of their time worked during individual work weeks; or (3) requiring Tip-Credit Employees to return a portion of their tips to the restaurants to cover the cost of customer walkouts.

20. There are numerous similarly-situated current and former Tip-Credit Employees who worked at Defendants' Buffalo Wild Wings restaurants in Ohio who would benefit from the Court authorizing issuance of notice of this lawsuit so that these employees may opt in to this action.

21.    Similarly-situated Tip-Credit Employees are known to Defendants and are identifiable in Defendants' payroll records.

## OHIO CLASS DEFINITIONS AND RULE 23 ALLEGATIONS

22.    Plaintiffs bring the Claims for Relief for violation of Ohio's Constitution as a class action pursuant to Rule 23(a), (b)(2), and (b)(3). Plaintiffs bring these claims on behalf of themselves and all members of the following class (the "Ohio Class") comprised of:

**A. Ohio Class**

B. All current and former servers and bartenders who worked at one of the Defendants' owned Buffalo Wild Wings restaurants located in the state of Ohio at any time during the applicable limitations period covered by the filing of this Complaint (three years prior to filing) up to and including the date of final judgment in this matter.

**C. Rule 23 Allegations**

### 1. Numerosity (Rule 23(a)(1)).

23.    The potential quantity of members of the proposed Ohio Class as defined is so numerous that joinder of all members would be unfeasible and impractical. Plaintiffs are informed and believe that the total number of current and formerly employed members of the Ohio Class number is in the hundreds. The quantity and identity of such membership is readily ascertainable via inspection of the Defendants' employment and payroll records.

### 2. Existence of Common Questions of Law and Fact (Rule 23(a)(2)).

24.    There are common questions of law and fact as to the members of the Ohio Class which predominate over questions affecting only individual members which include, but are not limited to, the following:

a.  Whether Defendants failed to keep accurate records of all hours worked and wages earned by members of the Ohio Class;

b.  Whether Defendants failed to pay members of the Ohio Class the minimum wage in violation of Article II, §34a of the Ohio Constitution.

c.  Whether the members of the Ohio Class are entitled to compensatory damages, and if so, the means of measuring such damages;

d.  Whether the members of the Ohio Class are entitled to injunctive relief;

e.  Whether the members of the Ohio Class are entitled to restitution; and

f.  Whether Defendants are liable to members of the Ohio Class for attorneys' fees and costs.

### 3.  Typicality (Rule 23(a)(3)).

25.     The claims of the Plaintiffs are typical of the claims of all members of the Ohio Class they seek to represent because all members of the Ohio Class sustained injuries and damages arising out of Defendants' common scheme to maximize profits by skimming wages.

### 4.  Adequacy Rule (23(a)(4)).

26.     Plaintiffs are adequate representatives of the proposed Ohio Class they seek to represent because will fairly protect the interests of the members of the Ohio Class, they have no interests antagonistic to the members of the Ohio Class, and they will vigorously pursue this suit via attorneys who are competent, skilled and experienced in litigating matters of this type.

### 5.  Injunctive and Declaratory Relief (Rule 23(b)(2)).

27.     Injunctive Relief is appropriate pursuant to Rule 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the members of the Ohio Class, so that final injunctive relief as requested herein is appropriate respecting the Ohio Class as a whole.

### 6.  Predominance and Superiority of Class Action (Rule 23(b)(3)).

28.     The nature of this action and the nature of the laws available to members of the Ohio Class make the use of the class action format particularly efficient and the appropriate procedure to afford relief to them for the wrongs alleged herein, for the following reasons:

a.  By establishing a technique whereby the claims of many individuals can be resolved at the same time, the class suit both eliminates the possibility of repetitious litigation and provides small claimants with a method of obtaining redress for claims which would otherwise be too small to warrant individual litigation;

b.  This case involves a large number of individual class members with many relatively small claims.  If each individual member was required to file an individual lawsuit, the Defendants would necessarily gain an unconscionable advantage because it would be able to exploit and overwhelm the limited resources of each individual class member

7

with its vastly superior financial and legal resources;

c. Requiring each individual member to pursue an individual remedy would also discourage the assertion of lawful claims by class members, who would be disinclined to pursue action against Defendants because of an appreciable and justifiable fear of retaliation and permanent damage to their lives, careers and well-being;

d. Proof of a common business practice to maximize profits through wage theft will provide the common proof to establish liability against Defendants;

e. Absent class treatment, the prosecution of separate actions by the individual members of the Ohio Class, even if possible, would likely create:

    1. a substantial risk of each individual plaintiff presenting in separate, duplicative proceedings the same or essentially similar arguments and evidence, including expert testimony;

    2. a multiplicity of trials conducted at enormous expense to both the judicial system and the litigants;

    3. inconsistent or varying verdicts or adjudications; and

    4. potentially incompatible standards of conduct for Ultimate Fitness.

f. The claims of the individual members of the Ohio Class are not sufficiently large to warrant vigorous individual prosecution considering all of the concomitant costs and expenses attendant thereto;

g. Courts seeking to preserve efficiency and other benefits of class actions routinely fashion methods to manage any individual questions; and

h. Judicial precedent urges trial courts, which have an obligation to consider the use of innovative procedural tools to certify a manageable class, to be procedurally innovative in managing class actions.

29. Finally, adjudicating this action on a class basis is appropriate because liability turns on Defendants' own uniform and systematic scheme to maximize profits by depriving its employees of wages, overtime wages, and forcing them to work off the clock. Class-wide liability

can be determined through manageable devices of common proof such as statistical random sampling, survey evidence based on scientific principles, representative testimony, documentary evidence and Defendants' common policies and practices. Once liability is determined, the damages suffered by each member can also be determined by the same common proof.

30.　　Plaintiffs do not contemplate class notice if the Ohio Class is certified under Rule 23(b)(2), which does not require notice, and notice to the putative Class may be accomplished through publication, or other forms of distribution, if necessary, if the Class is certified under Rule 23(b)(3), or if the Court otherwise determines class notice is required. Plaintiffs will, if notice is so required, confer with Defendants and seek to present the Court with a stipulation and proposed order on the details of a class notice program.

31.　　Defendants are the owners, principal shareholders, or controlling members or managers of Buffalo Wild Wings restaurants in Ohio.

32.　　At all relevant times, Defendants have continuously been an employer of multiple employees engaged in interstate commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

33.　　Defendant Larry Tipton resides in Lancaster, Ohio and has control over the day-to-day business operations of the corporate Defendants' Buffalo Wild Wings restaurant. Among other things, Tipton has the authority to hire and fire employees, the authority to direct and supervise the work of employees, the authority to sign on each corporation's checking accounts, including payroll accounts, and the authority to participate in decisions regarding employee compensation and capital expenditures. Tipton controls the "purse strings" of his Buffalo Wild Wings restaurants, including those operated through the corporate Defendants: he signs the corporate checks without limitation as to amount; provides funds to purchase goods, as well as pay employees; and has authority to sign on

the checking accounts from which Plaintiffs were paid.

34.     The corporate Defendants are Ohio corporations with their principal business being Buffalo Wild Wings restaurants in Ohio.

35.     Plaintiff Zachary Barton is an Ohio citizen and resides in this judicial district. Defendants employed Plaintiff Zachary Barton as a server and bartender at their Buffalo Wild Wings restaurant in Athens, Ohio, between approximately November, 2012 and June, 2016. During his employment, Barton also worked occasionally as a Wing Certified Trainer.

36.     Plaintiff Ethan Forness is a Florida citizen and resides in Sarasota, Florida. Defendants employed Plaintiff Ethan Forness as a server and bartender at their Buffalo Wild Wings restaurant in Athens, Ohio between approximately October, 2014 and February, 2017.  During his employment, Forness also worked occasionally as a Wing Certified Trainer.

37.     Defendants paid Plaintiffs less than minimum wage to work as a server and bartender. Plaintiffs were not informed by Defendants' of the tip-credit provisions of the FLSA. Defendants also required Plaintiffs to "reimburse" expenses to the restaurant from tips in violation of the FLSA.

38.     While paying them sub-minimum wage, Defendants required Plaintiffs to spend over twenty percent of their work time in one or more individual workweeks performing *related* non-tipped work, and required them to perform *unrelated* non-tipped duties that had no customer interaction and that did not generate tips. A non-exhaustive list of these examples follows:

        a.  Cleaning bathrooms;

        b.  Sweeping, mopping, and/or deck scrubbing restaurant floors;

        c.  Sweeping up cigarette butts from the patio and/or removing them from the flower beds outside the restaurant;

10

    d.   Washing silverware, food platters, salad plates, and/or glassware;

    e.   Taking out garbage;

    f.   Cleaning restaurant walls;

    g.   Cleaning the soda machines;

    h.   Cleaning high chairs and booster seats;

    i.   Rolling silverware;

    j.   Setting up or breaking down the expo line; and

    k.   Portioning Food.

39.    Defendants' requirement that Plaintiffs and the putative class portion food while working on tip credit required a substantial amount of time. This task alone often takes more than an hour during a shift.

**Common Factual Allegations**

40.    Buffalo Wild Wings restaurants, including those owned and operated by Defendants, operate as a chain concept, so that customers can obtain essentially the same food and drink items, and experience the same customer service, at all Buffalo Wild Wings restaurants.

41.    Defendants trained their Buffalo Wild Wings employees, including Tip-Credit Employees and store managers, to perform the same, or essentially the same, job duties. This identical training is delivered regardless of the location where they are assigned to work.

42.    During the Plaintiffs' employment, Defendants permitted servers to transfer between their Buffalo Wild Wings restaurants.

43.    Defendants require their Tip-Credit Employees to perform non-tipped work each shift in addition to serving customers.

44.    During the Plaintiffs' employment, checklists were posted in Defendants'

11

restaurants with numerous non-tipped duties that servers and bartenders were required to perform in addition to serving customers.

45.     During the Plaintiffs' employment, managers verified that severs and bartenders performed the non-tipped work covered in the checklists.

46.     When Plaintiffs and other Tip-Credit Employees performed non-tipped work, they did not interact with customers and did not have the opportunity to earn tips.

47.     Defendants require Tip-Credit Employees to perform non-tipped work before their restaurants are open to customers.

48.     Defendants require Tip-Credit Credit Employees to perform non-tipped work after they are finished serving customers and/or their restaurants are closed to customers.

49.     During Plaintiffs' employment, Defendants had no policies prohibiting Tip-Credit Employees from performing certain types, or excessive amounts, of non-tipped work.

50.     During Plaintiffs' employment, Defendants did not record or track the amount of time Tip-credit Employees spent performing non-tipped work.

51.     Defendants use a standard point-of-sale system to record hours worked by Tip-Credit Employees at their Buffalo Wild Wings restaurants.

52.     Defendants analyze and evaluate information collected by their point-of-sale system, including labor cost information, for each of their restaurants.

53.     Defendants' managers at their restaurants are eligible to receive bonuses based, in part, on meeting or exceeding certain labor cost targets.

54.     In their point-of-sale system, Defendants can create different "clock in" codes that would allow their Tip-Credit Employees to clock in at the full minimum wage rate when performing non-tipped work, while clocking in at a sub-minimum, tip-credit rate when serving customers.

12

55.     Defendants did not allow their Tip-Credit Employees to clock in at the full minimum wage rate when performing the non-tipped work described in this Complaint, although Defendants had the capacity to do so.

56.     Defendants also routinely clocked Plaintiffs and the putative class out and required them to do significant work while clocked out, sometimes in excess of two hours at the close.

### I. Defendants Violated the FLSA by Requiring Plaintiffs and Class Members to Perform Substantial Non-Tip-Producing Tasks Without Being Paid Minimum Wage.

57.     Under the FLSA, as interpreted by the Department of Labor (the "DOL"), employers may not take the tip credit for time the employee is engaged in a non-tipped job and instead must pay their employees at the standard minimum wage. The DOL has formalized this concept under the "Dual Jobs" regulation which states as follows:

> **Dual jobs**. In some situations, an employee is employed in a dual job, as for example, where a maintenance man in a hotel also serves as a waiter. In such a situation the employee . . . is a tipped employee only with respect to his employment as a waiter. He is employed in two occupations, and no tip credit can be taken for his hours of employment in his occupation of maintenance man. Such a situation is distinguishable from that of a waitress who spends part of her time cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses…

58.     The Dual Jobs regulation imposes both quantitative and qualitative restrictions on the employer's ability to take the tip credit for non-tip-producing tasks, as explained in the DOL's Field Operations Handbook (the "Handbook" or "FOH").

59.     The quantitative restriction limits the amount of time an employee can spend on tasks related to the tipped occupation, as follows:

60.     29 CFR 531.56(e) permits the employer to take a tip credit for time spent in duties

13

related to the tipped occupation of an employee, even though such duties are not by themselves directed toward producing tips, provided such related duties are incidental to the regular duties of the tipped employees and are generally assigned to the tipped employee. For example, duties related to the tipped occupation may include a server who does preparatory or closing activities, rolls silverware and fills salt and pepper shakers while the restaurant is open, cleans and sets tables, makes coffee, and occasionally washes dishes or glasses. FOH § 30d00(e)(2) (rev. 668, June 20, 2012).

61.    The Handbook continues: [W]here the facts indicate that tipped employees spend a substantial amount of time (in excess of 20 percent of the hours worked in the tipped occupation in the workweek) performing such related duties, no tip credit may be taken for the time spent in those duties. All related duties count toward the 20 percent tolerance.

62.    This "20 percent tolerance," which is one method of determining whether an employee is effectively engaged in a dual jobs position, is referred to as the "20 Percent Rule." Courts have routinely utilized this quantitative standard.

63.    The qualitative aspect of the Dual Jobs regulation prohibits taking the tip credit for work that is "not related to the tipped occupation. For example, maintenance work (e.g., cleaning bathrooms and washing windows) are not related to the tipped occupation of a server; such jobs are non-tipped occupations." FOH § 30d00(e)(4).

64.    Defendants instituted a policy requiring Plaintiffs and Class Members to work dual jobs that included tipped tasks (directed toward producing tips) and substantial non-tip-producing tasks ("Non-Tipped Work"), exceeding 20 percent of their time, for which they were not paid the applicable minimum wage.

65.    Such Non-Tipped Work for servers includes but is not limited to: setting up the dining room areas, brewing beverages, cutting lemons, filling ice bins, baking bread, polishing and

14

stocking glassware, helping pack to-go orders, restocking salt/pepper and sugar caddies, pulling away tables to clean under booths, cleaning the server alley, sweeping floors, placing and removing silverware from dishwashing machine, polishing and rolling silverware, wiping wood, starting and warming the oven, maintaining and cleaning sanitation buckets, and cleaning and setting floor mats.

66.     Such Non-Tipped Work for bartenders includes but is not limited to: setting up and cleaning the bar area (front and back), stocking glassware, wiping and washing glassware; cleaning sinks, keg coolers, gaskets, and ice baths; handling to-go orders for the restaurant; cashing out servers; and performing server side work.

67.     Defendants have a policy and practice of paying Plaintiffs and Class Members, sub-minimum, tip-credit wages, even when Defendants require them to perform Non-Tipped Work that is not related to their tipped occupation, such as baking bread and performing other tasks, including but not limited to those previously set forth in this Complaint, not related to their tipped occupation.

68.     Even if the Non-Tipped Work Defendants require Plaintiff and Class Members to perform was related to their tipped occupation, Defendants violate the FLSA by its policy and practice of requiring Plaintiffs and Class Members to perform such work for more than 20 percent of their time worked during the workweek.

69.     Plaintiffs were required to perform substantial non-tip-producing tasks for more than 20 percent of her hours in the workweek without being paid a minimum wage.

70.     Plaintiffs were also required to perform tasks that were unrelated to and not incidental to her tip-producing occupation without being paid a minimum wage.

71.     Defendants' policy and practice of requiring Plaintiffs and Class Members to perform excessive and/or unrelated Non-Tipped Work while paying them sub-minimum, tip-credit wages violates the FLSA.

15

**II. Defendants Violate the FLSA by Failing to Pay Plaintiffs and Class Members for Off-the-clock Work.**

72.     Defendants encourage Plaintiffs and Class Members to work off the clock by limiting the hours that they are permitted to be clocked in.

73.     Defendants require Plaintiffs and Class Members to perform substantial non-tip-producing work when they are clocked in.

74.     Defendants have refused to pay Plaintiffs and Class Members minimum wage for non-tip-producing work that exceeds 20 percent of the hours in a workweek.

75.     Plaintiffs and Class Members worked off the clock without pay, with the knowledge, expectation, and acquiescence of Defendants.

76.     Defendants clocked Plaintiffs and Class Members out yet required them to remain to complete multiple tasks, including but not limited to cleaning tables, mopping bathrooms, wiping sinks and mirrors, detailing the bar, filling salt and pepper shakers, replacing ketchups, sweeping and vacuuming carpets, mopping tile surfaces, cleaning dishes, restocking lids, cups, drink mixers, and sugar packets, rotating the beer cooler, cleaning dish area, organizing keg cooler, carrying keg to the cooler, wiping salt off the tables,

77.     The willful refusal to pay wages for off-the-clock work constitutes a violation of the FLSA.

## COUNT I

## VIOLATIONS OF THE FAIR LABOR STANDARDS ACT (Minimum Wage and Overtime, On Behalf of Themselves and the Class)

78.     Plaintiffs re-allege and incorporate the previous paragraphs of this Complaint as if fully set forth in this cause of action.

79.     This cause of action arises from Defendants' violation of the FLSA for their failure

16

to pay minimum wages and overtime pay to Plaintiff and similarly-situated Tip-Credit Employees.

80.     Plaintiffs bring this cause of action as a collective action under the FLSA, § 216(b).

81.     Defendants were Plaintiffs' "employer" as defined by the FLSA, § 203(d).

82.     Plaintiffs were Defendants' "employee[s]" as defined by the FLSA, § 203(e)(1).

83.     During the entire course of their employment by Defendants, Plaintiffs were not exempt from the minimum wage or overtime provisions of the FLSA.

84.     In one or more individual workweeks during their employment, each Plaintiffs' average compensation (*i.e.* total weekly compensation divided by total weekly hours), excluding tips, fell below minimum wage.

85.     Defendants are, individually and collectively, an "enterprise" as defined by the FLSA, § 203(r)(1).

86.     Defendants are, individually and collectively, an enterprise(s) engaged in commerce or the production of goods for commerce within the meaning of the FLSA, § (203)(s)(1)(A).

87.     Defendants' annual gross volume of sales made, or business done, has exceeded $500,000 in each of the last three calendar years.

88.     Defendants' individual Buffalo Wild Wings restaurant(s), including those operating under the Defendant corporate entities are engaged in related activities performed for a common business purpose, through unified operation or common control.

89.     Defendants violated the FLSA by requiring Plaintiffs and similarly-situated Tip-Credit Employees to perform non-tipped work that is *unrelated* to their tipped occupation, while paying them less than minimum wage, such as: cleaning bathrooms, sweeping, mopping, or deck scrubbing floors, washing dishes, and cleaning the restaurant.

90.     Defendants also violated the FLSA by requiring Plaintiffs and similarly-situated

Tip-Credit Employees to perform non-tipped work that, even if related to their tipped occupation, exceeded twenty percent of their time worked in one or more individual workweeks without paying them full minimum wage.

91.     Defendants violated the FLSA by making tip credit against the minimum wages of Plaintiffs and similarly-situated Tip-Credit Employees without informing them of the tip credit provisions of the FLSA.

92.     Defendants violated the FLSA by not paying overtime pursuant to the FLSA.

93.     Defendants' violations of the FLSA were willful.

## COUNT II
## VIOLATION OF THE FAIR LABOR STANDARDS ACT - UNPAID WAGES (On Behalf of Themselves and the Class)

64. Plaintiffs, on behalf of themselves and the Class, repeat and re-allege all allegations above as though they are fully set forth herein.

65. At all relevant times, Defendants have been and continue to be an employer engaged in interstate commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

66. At all relevant times, Defendants employed, and/or continue to employ, Plaintiffs and each of the Class Members within the meaning of the FLSA.

67. At all relevant times, Defendants had a uniform policy and practice of knowingly permitting Plaintiffs and Class Members to work off the clock without compensation.

68. Defendants' policy and practice of not paying minimum wage for non-tip-producing work led to Plaintiffs and Class Members working off the clock without compensation.

69. Defendants failed to pay Plaintiffs and Class Members wages for off-the-clock work.

70. Defendants' conduct constitutes willful violations of the FLSA within the meaning of 29 U.S.C. § 255(a).

71. Due to Defendants' FLSA violations, Plaintiffs and the Class Members were damaged and are entitled to recover from Defendants compensation for unpaid wages; an additional equal amount as liquidated damages; and reasonable attorneys' fees, costs, and expenses of this action, pursuant to 29 U.S.C. § 216(b).

<u><strong>COUNT III</strong></u>

**VIOLATION OF ARTICLE II, §34A OF THE OHIO CONSTITUTION -  (On Behalf of Themselves and the Ohio Class)**

72. Plaintiffs re-allege and incorporate by reference all the preceding paragraphs, as if fully set forth herein.

73. As alleged above, Plaintiffs and members of the Ohio Class were consistently and uniformly not paid the minimum wage or overtime pay for all the work they performed during the course of their employment with Defendants.  Defendants' policy and practice was to force Ohio Plaintiffs and members of the Ohio Class to work off the clock to cut costs and increase profits.  Defendants' unlawful conduct was neither inadvertent, nor de minimis, but widespread, repeated and part of a pattern and practice of conduct affecting Ohio Plaintiffs and all members of the Ohio Class.

74. Defendants permitted, consented, and had actual or constructive knowledge the Plaintiffs and members of the Ohio Class were not receiving minimum wage or overtime pay because Defendants knowingly required non tip-related labor to be done off the clock and while on tipped wages.  Defendants also knowingly fabricated wage statements in order to make it appear that the Plaintiffs and the Ohio Class were receiving minimum wage.

75. As a result of the foregoing, Plaintiffs and the members of the Ohio Class have been damaged in an amount to be determined at trial.  The Ohio Constitution contains a three-year statute of limitations regardless of whether the violation was willful (the "Ohio Class Period"). Therefore, the Ohio Plaintiffs and members of the Ohio Class are entitled to treble damages and attorneys' fees and costs and other relief, including penalties and interest, as this Court deems just and appropriate.

19

**Prayer for Relief**

WHEREFORE, Plaintiffs, on behalf of themselves and similarly-situated Tip-Credit Employees, pray for judgment against Defendants as follows:

A. For an order certifying that the First Two Claims for Relief of this Complaint may be maintained as a collective action pursuant to 29 U.S.C. § 216(b) and that prompt notice of this action be issued to potential members of the opt-in FLSA Class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims;

B. For an order certifying that the Third Claim for Relief be maintained as a class action pursuant to Rule 23 on behalf of the members of the Ohio Class who were either employed or who performed work in the State of Ohio during the Ohio Class Period and that notice of the pendency of this action be provided to members of the Ohio Class.

C. Designation of Plaintiffs as the Class Representatives for the FLSA Class;

D. Designation of the Plaintiffs as the Class Representatives for the Ohio Class;

E. Designation of Plaintiffs' attorney as Class Counsel for both the FLSA Class and the Ohio Class;

F. A declaratory judgment that the practices complained of herein are unlawful under appropriate state law;

G. Appropriate equitable relief to remedy Defendants' violations of state law, including but not necessarily limited to an order enjoining Defendants from continuing its unlawful practices;

H. For an award of unpaid Federal minimum wages for each hour worked as required by the FLSA, 29 U.S.C. §206;

I. All unpaid overtime as calculated by the applicable provision of the FLSA, 29 U.S.C. §§ 201 et seq., and applicable regulations promulgated in the Code of Federal Regulations and/or opinions and directives of the Department of Labor;

J. All appropriate state and federal statutory penalties;

K. An award of compensatory damages to the extent available, liquidated damages pursuant

20

to the FLSA and the Ohio Constitution, and restitution to be paid by Defendants according to proof;

L.  Unpaid overtime premium compensation as provided by federal and Ohio law for overtime hours worked;

M.  Pre-Judgment and Post-Judgment interest, as provided by law;

N.  Attorneys' fees and costs of suit, including expert fees and fees pursuant to Ohio law and as permitted by the FLSA

O.  Judgment in the amount of the owed minimum wages for all time worked by Plaintiffs and similarly-situated Tip-Credit Employees;

P.  Liquidated damages in an amount equal to the amount of unpaid minimum wages for the FLSA class and equal to twice the amount for the Ohio Class;

Q.  Such other and further relief as this Court deems just and proper.

**Jury Demand**

Plaintiffs demand a trial by jury.

Respectfully submitted,

s/Michael L. Fradin
LAW OFFICE OF MICHAEL L. FRADIN
Michael L. Fradin, Esq.
mike@fradinlaw.com
8401 Crawford Ave. Ste. 104
Skokie, IL 60076
Telephone: 847-986-5889
Facsimile: 847-673-1228