**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| Zachary Barton and Ethan Forness<br>*Individually and on behalf of all others similarly situated* | Case No. 2:2017-cv-00476-ALM-EPD |
| Plaintiffs, | JUDGE ALGENON L. MARBLEY |
| *v.* | MAGISTRATE JUDGE ELIZABETH A. PRESTON DEAVERS |
| Lancaster Wings, Inc., Lancaster Wings West LLC, Lancaster Wings West II LLC, Lancaster Wings West III LLC, and Larry Tipton | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED
MOTION FOR APPROVAL OF SETTLEMENT, APPOINTMENT
OF SETTLEMENT ADMINISTRATOR, AND APPROVAL OF SERVICE
AWARDS, AND ATTORNEYS' FEES AND COSTS**

Douglas M. Werman
WERMAN SALAS P.C.
dwerman@flsalaw.com
77 West Washington St., Suite 1402
Chicago, Illinois 60602
Telephone: (312) 419-1008

Michael L. Fradin, Esq.
LAW OFFICE OF MICHAEL L. FRADIN
mike@fradinlaw.com
8401 Crawford Ave. Ste. 104
Skokie, IL 60076
Telephone: 847-986-5889

*Counsel for Plaintiffs and Eligible Settlement Class Members*

The Named Plaintiffs, individually and on behalf of those similarly situated, including Opt-in Plaintiffs (collectively, "Plaintiffs"), and Defendants[1] have reached a Settlement of this lawsuit (the "Action").[2] Because the Settlement is a fair and reasonable resolution of a bona fide dispute, the Court should enter the proposed order, attached hereto as Exhibit 4, and approve the settlement, appoint Rust Consulting as the settlement administrator, and approve the service awards and attorney's fees and costs.

I.      FACTUAL AND PROCEDURAL BACKGROUND

This is a wage case by servers and bartenders at 10 Buffalo Wild Wings restaurants operated by Defendants in Ohio and Arizona.[3] Plaintiffs allege that Defendants violated the Fair Labor Standards Act ("FLSA"), the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), and the Ohio Constitution by failing to pay Plaintiffs and other tipped employees all earned minimum and overtime wages. ECF No. 62, Third Amd. Compl. ¶ 1. Four of Plaintiffs' claims are for violations of the "tip credit" provisions of federal and state law. Three other claims implicate the general provisions of federal and state minimum wage and overtime laws.

*Tip Credit Claims*: Defendants pay their servers and bartenders less than the prevailing minimum hourly wage and apply the "tip credit" to their minimum wage obligations. *Id.* at ¶ 25. Plaintiffs claim that Defendants forfeited their right to take a tip credit for three reasons: (1) Defendants required servers and bartenders to reimburse their restaurants when customers left without paying their bill; (2) Defendants required servers

---

[1]     "Defendants" are Lancaster Wings, Inc., Lancaster Wings West LLC, Lancaster Wings West II LLC, Lancaster Wings West III LLC, and Larry Tipton.

[2]     The Settlement is memorialized in the Joint Stipulation of Settlement ("Joint Stipulation" or "Settlement"), attached as Exhibit 1. All capitalized terms are defined in the Joint Stipulation.

[3]     The Ohio locations are located in Lancaster, New Philadelphia, Canal Winchester, Taylor Square-Reynoldsburg, Mt. Vernon, Athens, and Heath. The Arizona locations are located in Flagstaff, Bullhead City, and Prescott Valley.

and bartenders to spend excessive amounts (more than 20%) of their overall time each week on non-tip-producing tasks that were related to their tipped jobs; and (3) Defendants required servers and bartenders to perform duties that were unrelated to their tipped jobs. ECF No. 62, Third Amd. Compl. ¶¶ 85-87, 98.

*Other Minimum Wage and Overtime Claims*: In addition to the tip-credit claims, Plaintiffs allege that Defendants required them and other tipped employees to work while they were off the clock. *Id.* at ¶¶ 89, 93, 98. Plaintiffs claim that unpaid time less than 40 hours is owed at the full minimum wage and the time they worked off the clock in excess of 40 hours a week is owed to them at one and one-half times the applicable minimum wage. *Id.* Finally, Plaintiffs allege that Defendants deducted the cost of required uniforms from their pay, thereby reducing their compensation below minimum wage. *Id.* at ¶ 97.

This Action was filed on June 3, 2017. ECF No. 1. Plaintiffs subsequently filed First, Second, and Third Amended Complaints. ECF Nos. 28, 52, 62. Ten additional servers and bartenders became "Opt-in Plaintiffs" by filing consents to join this Action. On October 25, 2017, Defendants filed a Rule 12(b)(6) partial motion to dismiss the non-tipped duties claims arising under the FLSA, the Ohio Constitution, and the OMFWSA. ECF No. 35. The motion was fully briefed, mooted by Plaintiffs' Second Amended Complaint, and then fully re-briefed. ECF Nos. 41, 48, 53, 59, 68. On November 18, 2017, the Parties participated in a mediation with a neutral mediator but were unable to reach a settlement. Ex. 2, Werman Decl. ¶ 7. The Parties then engaged in written discovery and document production. *Id.* Plaintiffs' Counsel obtained sworn declarations from Named Plaintiffs and certain Opt-in Plaintiffs to support forthcoming motions for class and collective action certification. *Id.* On April 3, 2018, the Parties again participated in a mediation with the same neutral

mediator but were unable to reach a settlement. *Id*. After that mediation, the mediator continued to work with the Parties and, on April 23rd – after the mediator made a final settlement proposal – the Parties finally reached the FLSA collective action Settlement that they now seek this Court to approve.[4] *Id.*

## II. Overview of the Settlement

### A. Settlement Fund

Defendants have agreed to pay $1,550,000.00 to settle the claims in this Action, which shall be used to provide for: (1) Settlement Payments to Eligible Settlement Class Members, (2) Service Awards, (3) Plaintiffs' Attorney's Fees; (4) Plaintiffs' Litigation Expenses; and (5) Settlement Administration Expenses. Ex. 1, Joint Stipulation, § 4(a). Separately, Defendants will pay the employer's share of payroll taxes on the portion of Settlement Payments allocated to unpaid wages. *Id.* at § 4(b).

### B. Eligible Settlement Class Members, Allocation Formula, and Tax Treatment

Eligible Settlement Class Members are Plaintiffs and other servers and bartenders who worked for Defendants between September 1, 2014 and April 23, 2018. Ex. 1, Joint Stipulation, § 4(c)(i). Exhibit A to the Joint Stipulation of Settlement (*see* Ex. 1) lists all Eligible Settlement Class Members. Settlement Payments to Eligible Class Members will be paid from the Net Settlement Fund, which is the $1,550,000 Settlement Fund minus Service Awards, Plaintiffs' Attorneys' Fees and Litigation Costs, and Settlement Administration Expenses. *Id.* at § 4(b)(i). Settlement Payments to Eligible Settlement Class Members will be allocated from the Net Settlement Fund based on employees' actual hours worked and rates of pay with the following formula and distributed *pro rata*:

---

[4]    Because the Parties reached an FLSA collective action settlement, the Parties do not seek approval of any Rule 23 classes under Ohio law.

> [(the product of the number of hours worked at a sub-minimum, tip-credit wage rate by each employee * applicable minimum wage) − (the product of the number of hours worked at a sub-minimum, tip-credit wage rate by each employee * the sub-minimum tip-credit wage rate the employee was paid)].

*Id.* at § 4(c)(i). The minimum Settlement Payment for any Eligible Settlement Class Member is $50.00. *Id.* at § 4(c)(iii). Fifty percent of each Settlement Payment will be allocated to unpaid wages, with payroll taxes withheld, and fifty percent will be allocated to liquidated damages, not subject to tax withholdings. *Id.* at § 4(d).

### C.    Release of Claims for Eligible Settlement Class Members

Eligible Settlement Class Members who chose to participate in the Settlement by timely signing and cashing their Settlement Payment checks will release their minimum wage and overtime claims as asserted in the Action. Ex. 1, Joint Stipulation, § 5(a). The Settlement Notices that Eligible Settlement Class Members receive with their Settlement Payment and the back of each check will contain the following language:

> By signing and cashing or otherwise negotiating this check, I agree to join the lawsuit *Barton v. Lancaster Wings, Inc.*, (Case No. 2:2017-cv-00476-ALM-EPD) (N.D. Ohio) (the "Action") and release all claims or causes of action I have against the Released Parties in the Action from September 1, 2014 until April 23, 2018 for unpaid minimum and overtime wages that were asserted in the Action, or that arise out of facts asserted in the Action, including minimum and overtime wage claims under the Fair Labor Standards Act and parallel state law, and including any related claims for liquidated damages, penalties, attorneys' fees and costs, and interest.

*Id.* and Settlement Notice (Ex. B to Joint Stipulation). Eligible Settlement Class Members who do not timely sign and cash their Settlement Payment checks will not release any claims. *Id.* at § 5(b).  Settlement Payment checks are valid for 150 days from mailing. *Id.* at § 7(f)(i). For any uncashed Settlement Payments that remain after the 150-day check cashing period, twenty-five percent will be distributed to the National Employment Law Project and seventy-five percent to Defendants. *Id.* at § 7(f)(vii).

**D.      Service Awards and Release of Claims for Those Receiving Them**

The Settlement provides for Service Awards of $5,000 each to the Named Plaintiffs for their work in prosecuting this action and recovering money on behalf of all Eligible Settlement Class Members, including conferring with Plaintiffs' Counsel, filing this Action in their own names, providing sworn declarations, and preparing for and attending mediation. Ex. 1, Joint stipulation, § 6(d). The following Opt-in Plaintiffs who provided sworn declarations in support of the claims in the case will receive Service Payments of $500.00 each: Christopher Cannon, Danielle Thorp, Kayla Whitcraft, Kristen Winchers, Mary Katherine Mullen, and Tyler Thorp. *Id.* In exchange for their Service Payments, Named Plaintiffs and these Opt-in Plaintiffs will provide a general release of claims to Defendants. *Id.* at § 5(c).

**E.      Settlement Administration**

The Settlement provides for appointment of Rust Consulting, Inc. to administer the settlement. *Id.* at §§ 1(l), 4(b)(iv). The Settlement Administrator will establish a Qualified Settlement Fund, handle tax withholding and reporting, mail Settlement Payment checks and Settlement Notices, and update addresses and re-mail undeliverable Settlement Payments and Notices. *Id.* at §§ 1(l), 4(b)(iv). The Settlement Administrator will receive $14,000.00 from the Settlement Fund for its fees in administering the Settlement. *Id.* at §§ 4(d), 7.

**F.      Plaintiffs' Attorneys' Fees and Litigation Costs**

The Settlement provides that Plaintiffs' Counsel may request one-third of the $1,550,00.00 Settlement ($516,666.66) as reasonable attorneys' fees. *Id.* at §§ 4(b)(iii), 6(a). Plaintiffs' Counsel may also request reimbursement of $12,412.27 in actual litigation costs, including filing fees, pro hac vice fees, postage, travel expenses, mediation fees, and legal research, and copying costs. *Id.*

## III. ONE-STEP APPROVAL OF THE SETTLEMENT IS APPROPRIATE

Collective actions under the FLSA are fundamentally different than class actions under Rule 23. *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1529 (2013). The due process concerns in Rule 23 class action settlements are not present in collective actions brought under the FLSA, because FLSA collective action members must affirmatively join the lawsuit by opting-in, instead of opting-out, to be bound by decisions of the Court. *Woods v. New York Life Ins. Co.*, 686 F.2d 578, 579-80 (7th Cir. 1982). Thus, courts do not apply the exacting preliminary and final approval standards of a class action settlement under Rule 23 to FLSA settlements. *See, e.g., Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 476 (S.D.N.Y. 2013). Instead, courts regularly apply a one-step approach to determine whether an FLSA settlement should be approved when, as here, there are no accompanying Rule 23 classes in the settlement. *See, e.g., Cooper v. Winking Lizard, Inc.*, Case 2017 WL 4465759, at *1 (N.D. Ohio Oct. 4, 2017) (approving FLSA collective action settlement in one step).[5] The Court should follow these cases and approve this Settlement in one step.

## IV. THE COURT SHOULD APPROVE THE FLSA SETTLEMENT

Where the litigation arises from a private enforcement action under Section 16(b) of the FLSA, 29 U.S.C. § 216(b), the standard for approval of a settlement is straightforward: a district court should approve a settlement if it was reached as a result of contested litigation and it is a fair and reasonable resolution of a *bona fide* dispute between the parties. *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1352-54 (11th Cir. 1982) (citing *Brooklyn Sav.*

---

[5]      *See also Salinas v. U.S. Xpress Enter., Inc.*, 2018 WL 1477127, at *11 (E.D. Tenn. Mar. 8, 2018) (same), *report and recommendation adopted*, 2018 WL 1475610 (E.D. Tenn. Mar. 26, 2018); *Knox v. Jones Grp.* 2017 WL 3834929, at *2 (S.D. Ind. Aug. 31, 2017) (same); *Furman v. At Home Stores LLC*, No. 2017 WL 1730995, at *1 (N.D. Ill. May 1, 2017) (same); *Briggs v. PNC Fin. Servs. Grp., Inc.*, 2016 WL 7018566, at *1 (N.D. Ill. Nov. 29, 2016) (same); *Castillo v. Noodles & Co.*, 2016 WL 7451626, at *1 (N.D. Ill. Dec. 23, 2016) (same); *Prena v. BMO Fin. Corp.*, 2015 WL 2344949, at *1 (N.D. Ill. May 15, 2015) (same).

*Bank v. O'Neil*, 324 U.S. 697 (1945); "The existence of a *bona fide* dispute serves as a guarantee that the parties have not manipulated the settlement process to permit the employer to avoid its obligation under the FLSA." *Filby v. Windsor Mold USA, Inc.,* 2015 WL 1119732, at *2 (N.D. Ohio March 11, 2015).

The Court, therefore, should perform two inquiries before approving an FLSA settlement. First, the Court must be satisfied that the settlement was the product of "contested litigation." Second, the Court must be satisfied that the settlement involves a fair and reasonable resolution of a *bona fide* dispute between the Parties. Typically, courts rely on the adversarial nature of a litigated FLSA case resulting in settlement as indicium of fairness. *Lynn's Food Stores, Inc.*, 679 F.2d at 1354. If the proposed settlement reflects a reasonable compromise over contested issues, the Court may approve the settlement in order to promote the policy of encouraging settlement of litigation. *Id.*

### A. The Proposed Settlement Is the Product of Contested Litigation

The Settlement is a result of contested litigation given the fact that the Settlement has been reached in the context of this Action. The lawsuit has been pending for over a year, and was resolved only after the Parties twice briefed motions to dismiss, engaged in written discovery and document production, and participated in two in-person mediation sessions with follow-up assistance from the mediator. In this context, the Parties had a full opportunity to analyze the pertinent factual and legal issues and assess the strengths and weaknesses of the claims and defenses at issue in this case. Ex. 2, Werman Decl. ¶ 42. And "the participation of an independent mediator in the settlement negotiations virtually assures that the negotiations were conducted at arm's length and without collusion between the parties." *See Hainey v. Parrot,* 617 F. Supp. 2d 668, 673 (S.D. Ohio 2007).

**B.    The Proposed Settlement Reflects a Fair and Reasonable Resolution of a *Bona Fide* Dispute Between the Parties**

The second prong of the Court's settlement approval inquiry focuses on two issues: (1) confirming the existence of a *bona fide* dispute between the Parties and (2) reviewing the fairness and reasonableness of the proposed settlement. Both issues are satisfied.

### 1.    *Bona Fide* Dispute Between the Parties Over Liability

Plaintiffs alleged that Defendants violated the tip-credit provisions of the FLSA by requiring them to pay for customer walkouts and by requiring them to perform improper types, and excessive amounts, of non-tipped work. Plaintiffs further alleged that Defendants violated minimum wage and overtime provisions by requiring servers and bartenders to work "off the clock." Finally, Plaintiffs claim that Defendants violated the minimum wage law by deducting the cost of uniforms from tipped employees' pay. Defendants denied Plaintiffs' allegations, denied that Plaintiffs' non-tipped work claims stated a claim for relief, asserted that Plaintiffs were properly paid, and denied that Plaintiffs are entitled to damages. Given the current state of the law, the outcome of these disputes was far from certain. *Compare Craig v. Landry's*, 2016 WL 3496932, at *4 (S.D. Ohio June 21, 2016) (dismissing similar tip-credit claims as not legally viable) *with Osman v. Grube, Inc.*, 2017 WL 2908864, at *5 (N.D. Ohio July 7, 2017) (recognizing viability of tip-credit claims).

The Parties also disputed whether collective treatment of Plaintiffs' FLSA claims were appropriate. If the matter was not resolved by settlement, there was a risk that Plaintiffs would not succeed in moving for collective treatment of their claims. *See Langlands v. JK & T Wings, Inc.*, 2016 WL 4073548, at *5 (E.D. Mich. Aug. 1, 2016) (denying request to authorize notice to collective action members). And even if Plaintiffs obtained the right to proceed collectively, individualized differences may have arisen during

discovery that required decertification. *See White v. 14051 Manchester Inc.*, 301 F.R.D. 368, 379 (E.D. Mo. 2014) (decertifying FLSA tip-credit claims against restaurant chain).

For settlement purposes, only, the Parties agree that the Named Plaintiffs are similarly situated to Eligible Settlement Class Members in terms of compensation and job duties. But Defendants retain all defenses to collective treatment of the Named Plaintiffs' claims if the Court does not approve this Settlement. Ex. 1, Joint Stipulation, § 3.

## 2. The Proposed Settlement Is Fair and Reasonable

In determining whether a FLSA Settlement is fair and reasonable, courts generally examine four factors: (1) whether the parties fairly and honestly negotiated the settlement; (2) whether serious questions of law and fact exist which place the ultimate outcome in doubt; (3) whether the value of immediate settlement outweighs the mere possibility of future relief after protracted litigation; and (4) whether, in the judgment of the parties, the settlement is fair and reasonable. *Cannon v. Time Warner NY Cable LLC*, 2015 WL 4498808 (D. Colo. July 24, 2015). Each of these factors is satisfied.

### a. The Settlement was Fairly and Honestly Negotiated

The Parties were only able to reach a Settlement after participating in two in-person mediation sessions with a neutral mediator and continued work with the mediator after those sessions. In this context, there is a presumption that the Settlement was fairly and honestly negotiated. *Lewis v. Huntington Nat'l Bank*, 2013 WL 12231327, at *3 (S.D. Ohio May 30, 2013) (Marbley, J.); *see also Hainey*, 617 F. Supp. 2d at 673. In addition, because Defendants produced time and pay records for settlement members before the mediation and the Parties were able to negotiate as equals, with full knowledge of the value of the claims. Ex. 2, Werman Decl. ¶ 27.

9

### b. The Ultimate Outcome of the Ligation was Unknown

As outlined above, the Parties disagree about the merits of Plaintiffs' claims and the viability of Defendants' various defenses. If the litigation continued, Plaintiffs would have faced obstacles and uncertainties, including extensive discovery and the outcome of motions to authorize notice, for decertification, summary judgment, and potentially a trial.  *See, e.g., Lewis v. Huntington Nat'l Bank*, No. 2:11-CV-00058, 2013 WL 12231327, at *3 (S.D. Ohio May 30, 2013) (Marbley, J.) (recognizing that, absent settlement, wage and hour plaintiffs "would have had to show, through testimony and documentary evidence, the specific hours, times, and dates worked—a process requiring extensive and expensive additional discovery"); *Cornell v. World Wide Bus. Servs. Corp.,* 2015 WL 6662919, at *2 (S.D. Ohio Nov. 2, 2015) (decertifying collective because of "disparate factual and employment settings" of the individual opt-in plaintiffs); *Schaefer v. Walker Bros. Enter.*, 829 F.3d 551, 555 (7th Cir. 2016) (affirming summary judgment to restaurants in case asserting non-tipped work claims).

Even if Plaintiffs ultimately prevailed on the issue of liability, Plaintiffs would need to prove the amount of damages Plaintiffs suffered. With regard to damages, Plaintiffs contended when an employer prevents an employee from retaining all of their tips by requiring an employee to pay for customer walkouts, a full forfeiture of the tip credit is the appropriate remedy. *See, e.g., Bernal v. Vankar Enter., Inc.*, 579 F. Supp. 2d 804, 810 (W.D. Tex. 2008); *Vance v. Ala Carte Entm't, Inc.*, No. 01 C 5817, 2003 WL 24311811, at *2 (N.D. Ill. Apr. 14, 2003). By contrast, Defendants could rely on other cases suggesting that minimum wage violations are determined on a shift by shift or workweek by workweek basis, and a total forfeiture of the tip credit is improper.  *See* 29 U.S.C. 206(a)(1); *Morgan v. Speak Easy, LLC*, 625 F.Supp.2d 632, 645 (N.D. Ill. 2007). The same damages arguments

would apply to Plaintiffs' uniform deduction claims. The resolution of these issues alone would have resulted in a wide swing in the damages amount.

### c. The Value of the Settlement is Significant

The benefit that Eligible Settlement Class Members will receive from the Settlement as against the maximum they could have received if they had prevailed at trial is fair and reasonable. Each Eligible Settlement Class Member's Settlement Payment is set forth in Exhibit A of the Joint Stipulation. The Settlement Payments range from a minimum payment of $50.00 to a maximum payment of $7,077.71. Ex. 2, Werman Decl. ¶ 44. The net settlement represents an average of $786.95 per Eligible Settlement Class Member. The $1,550,000 settlement represents the recovery of 58% of the alleged wages owed to Eligible Settlement Class Members, which is an excellent result. *Dillworth v. Case Farms Processing, Inc.,* No. 5:08-cv-1694, 2010 WL 776933, at *8 (N.D. Ohio March 8, 2010) (finding that a recovery of one-third of the owed wages for class members, before deducting attorney's fees and costs, is "well above" average); *Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust,* 834 F.2d 677, 682 (7th Cir.1987) (finding adequate a settlement of 10% of the total sought due to risks and costs of trial).[6] And because an individual must affirmatively sign and cash his or her check to participate in the Settlement, as is clearly

---

[6]     *See also Lazy Oil Co. v. Witco,* 95 F.Supp.2d 290, 339 (W.D. Pa.1997) (approving 35% recovery for the entire class period, and 25.5% of damages within the limitations period); *In re Domestic Air Tranp. Antitrust Litig.,* 148 F.R.D. 297, 325 (N.D. Ga. 1993) (12.7% to 15.3%); *In re Newbridge Networks Sec. Litig.,* 1998 WL 765724, at *2 (D.D.C. Oct. 23, 1998) (approving settlement and concluding that while "[c]ourts have not identified a precise numerical range within which a settlement must fall in order to be deemed reasonable; [ ] an agreement that secures roughly six to twelve percent of a *potential* trial recovery, while preventing further expenditures and delays and eliminating the risk that no recovery at all will be won, seems to be within the targeted range of reasonableness"); *In re Ravisent Techs., Inc. Sec. Litig.,* 2005 WL 906361, at *9 (E.D. Pa. Apr. 18, 2005) (approving settlement, which amounted to 12.2% of damages, and citing a study by Columbia University Law School, which determined that "since 1995, class action settlements have typically recovered between 5.5% and 6.2% of the class members' estimated losses.") (internal citations omitted).

explained in the proposed Settlement Notice (Ex. B to Joint Stipulation), any Eligible

Settlement Class Members that are unhappy with their payments can decline to participate

and avoid releasing any claims. Ex. 1, Joint Stipulation, § 5(b).

> **d.  Plaintiffs' Attorneys and Named Plaintiffs Support the Settlement**

Plaintiffs' Counsel has comprehensive knowledge of the facts and legal issues

relating to the respective claims and defenses and has ample evidence on which to base an

informed assessment of the proposed Settlement. Ex. 2, Werman Decl. ¶ 45.  Plaintiffs'

Counsel believe the Settlement is fair and reasonable. *Id*. at  ¶ 46.  This factor supports

approval of the Settlement. Courts should generally "defer to the judgment of experienced

counsel who [have] competently evaluated the strength of [their] proofs," *Williams v.*

*Vukovich,* 720 F.2d 909, 922-23 (6th Cir. 1983), especially when the case has been

developed through discovery. *See In re Broadwing, Inc. ERISA Litig.,* 252 F.R.D. 369, 375

(S.D. Ohio 2006).

Additionally, the Named Plaintiffs participated in mediation and approved the terms

of the Settlement. Ex. 2, Werman Decl. ¶ 11.  In light of the foregoing, the Court should

approve the Parties' proposed Settlement of this Action.

## V.  THE REQUESTED SERVICE AWAWRDS SHOULD BE APPROVED

The Joint Stipulation contemplates providing a $5,000 Service Award to each of the

Named Plaintiffs and $500.00 Service Awards to Opt-in Plaintiffs who provided

declarations[7] to acknowledge their time and effort expended in helping to achieve a

successful Settlement. Courts may make separate awards to class representatives in

---

[7]  Christopher Cannon, Danielle Thorp, Kayla Whitcraft, Kristen Winchers, Mary Katherine Mullen, and Tyler Thorp.

recognition of their risks taken, time expended, and benefits to the collective. *Hadix v. Johnson,* 322 F.3d 895, 897 (6th Cir. 2003); *accord Dillworth,* 2010 WL 776933, at *7.

The role of the Named Plaintiffs and Opt-in Plaintiffs who provided declarations in this litigation was crucial. The Named Plaintiffs reviewed the complaint and initiated the lawsuit, conferred with Plaintiffs' Counsel on a regular basis, provided declarations, and attended two mediations. Ex. 2, Werman Decl. ¶ 11.  The Opt-in Plaintiffs who provided declarations served as key factual support for Plaintiffs' settlement negotiation positions. *Id.* And the requested payments are proportional to service payments recently awarded to Plaintiffs in other FLSA actions. *See Castillo v. Morales, Inc.*, 2015 WL 13021899, at *5 (S.D. Ohio Dec. 22, 2015) (Marbley, J.) (awarding $8,000 service payment to class representative in wage and hour case); *Swigart v. Fifth Third Bank*, 2014 WL 3447947, at *7 (S.D. Ohio July 11, 2014) (awarding $10,000 service payments to two class representatives in wage and hour case); *Johnson v. Midwest Logistics Sys., Ltd.,* 2013 WL 2295880, at *5 (S.D. Ohio May 24, 2013) (awarding $12,500 service award).[8]

## VI.  PLAINTIFFS' COUNSEL'S ATTORNEYS' FEES AND LITIGATION COSTS ARE REASONABLE AND SHOULD BE APPROVED

### A.  Plaintiffs' Requested Attorney's Fees in the Amount of $516,666.66 Are Reasonable

The attorney's fees provision of the FLSA exists to enable plaintiffs to employ reasonably competent lawyers without cost to themselves if they prevail, and thereby to help ensure enforcement of the substantive provisions of the Act. 29 U.S.C. §216(b). There are two methods for determining whether a fee is reasonable: the lodestar method and the percentage-of-the-fund method. *Van Horn v. Nationwide Prop. & Cas. Ins. Co.,* 436 F. App'

---

[8]     *See also*, *Koszyk v. Country Fin.*, 2016 WL 5109196, at *6-7 (N.D. Ill. Sept. 16, 2016) (approving $10,000 service payments for each of seven plaintiffs in a FLSA collective action).

496, 498 (6th Cir. 2011). The Court has the discretion to use either the lodestar method or a percentage of the common fund to award reasonable attorney fees. *Castillo v. Morales, Inc.*, 2015 WL 13021899, at *6 (S.D. Ohio Dec. 22, 2015) (Marbley, J.) (citing *See Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516-17 (6th Cir. 1993)). "In the Southern District of Ohio, the preferred method is to award a reasonable percentage of the fund, with reference to the lodestar and the resulting multiplier." *Kimber Baldwin Designs, LLC v. Silv Commc'ns, Inc.*, 2017 WL 5247538, at *5 (S.D. Ohio Nov. 13, 2017) (quotations and citation omitted). Here, Plaintiffs request that the Court use the percentage method and award them one-third of the settlement fund.

Courts in this district readily approve the percentage-of-the-fund method and award similar fees to those requested here, including in wage and hour cases. *Kritzer v. Safelite Sols., LLC*, 2012 WL 1945144, at *9 (S.D. Ohio May 30, 2012) (awarding 52 percent of maximum settlement fund to counsel in wage and hour case); *Swigart,* 2014 WL 3447947, at *6 (awarding 33 percent of $4 million settlement fund in wage and hour case); *see also Moore v. Aerotek, Inc.*, 2017 WL 2838148, at *6 (S.D. Ohio June 30, 2017), *report and recommendation adopted,* No. 2017 WL 3142403 (S.D. Ohio July 25, 2017) ("Fee awards in common fund cases generally are calculated as a percentage of the fund created, with the percentages awarded typically ranging from 20 to 50 percent of the common fund created."); *Kimber,* 2017 WL 5247538, at *5-*6 (awarding one-third of $450,000 fund).

To assist the Court in determining whether the requested fee is reasonable, the Sixth Circuit has identified the following factors: (1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent-fee basis; (4) society's stake in rewarding attorneys who

produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides. *Castillo*, 2015 WL 13021899, at *6 (Marbley, J.) (citing, among others, *Ramey v. Cincinnati Enquirer, Inc.,* 508 F.2d 1188, 1196 (6th Cir. 1974)). Each of these factors weighs strongly in favor of the reasonableness of the requested fee.

### 1. Value of the Benefit Provided

Under this Settlement, all Eligible Settlement Class Members receive direct cash payments representing a substantial recovery on their unpaid wage claims. There is no initial claims process that can decrease participation in the settlement. *See Castillo*, 2015 WL 13021899, at *6 (Marbley, J.) (noting, with concern, that the claims process in wage and hour settlement resulted in only 14 percent of eligible participants opting into the settlement). By contrast, in a settlement with a virtually identical structure to the one proposed here against another Buffalo Wild Wings franchise, there was a 65 percent participation rate. Ex. 3, Werman Decl., ¶ 43 (1,615 individuals in *Stokes* cashed checks according to Rust while 2,585 individuals were in the final settlement class list). "Further, the settlement provides relatively early relief to [collective action] members, and it eliminates the additional risks the parties would otherwise bear if this litigation were to continue. Absent settlement, the parties would have engaged in discovery from individual opt-in plaintiffs, of electronically-stored information, and a potential motion to decertify the collective, and dispositive motions on merits and damages issues." *Swigart,* 2014 WL 3447947, at *6. Instead of the risks of continued litigation, the gross Settlement provides Eligible Settlement Class Members 57% of their owed minimum wages, which is well above the average recovery in FLSA lawsuits. *Dillworth*, 2010 WL 776933, at *8 (finding that a recovery of one-third of the owed wages for class members, before deducting attorney's fees

15

and costs, is "well above" average).

### 2. Society's Interest in Rewarding Attorneys

There is no doubt that "society certainly has an interest in incentivizing attorneys to assist in combatting illegal nonpayment of wages." *Castillo*, 2015 WL 13021899, at *6 (Marbley, J.) (citing *Fegley v. Higgins*, 19 F.3d 1126, 1134-35 (6th Cir. 1994)). Plaintiffs' counsel took on this matter to protect the rights of low-wage tipped employees and litigated for nearly a year against experienced defense counsel. This factor supports awarding the requested fees to encourage qualified attorneys to fight for workers' unpaid wages.

### 3. Whether Services Were Undertaken on Contingent-Fee Basis

Plaintiffs' Counsel undertook the representation on a purely contingent basis. Ex. 2, Werman Decl. ¶ 23; Ex. 3, Fradin Decl. ¶ 7. Thus, Counsel has borne all of the risk that accompanies contingent-fee representation, including the prospect – very real in this case, considering the partial motion to dismiss – that the investment of substantial attorney time and resources would be lost. *Id.* Counsel should be compensated for this risk. *Lonardo v. Travelers Indem. Co.,* 706 F. Supp. 2d 766, 796 (N.D. Ohio 2010); *see also Crosby v. Bowater Inc. Ret. Plan,* 262 F. Supp. 2d 804, 814 (W.D. Mich. 2003) ("contingency serves to justify the higher fee"). "There is a public interest in ensuring that attorneys willing to represent clients in class action litigation are adequately paid so that they and others like them will continue to take on such cases." *Connectivity Sys. Inc. v. Nat'l City Bank,* 2011 WL 292008, at *14 (S.D. Ohio Jan. 25, 2011).

### 4. Value of Services Rendered on an Hourly Basis

For purposes of determining a reasonable attorney's fee, the hourly rate must be calculated in accordance with the prevailing market rate in the relevant community. *Blum v. Stenson*, 465 U.S. 896, 895 (1984). Generally, the "prevailing market rate [is] defined as the

rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Geier v. Sundquist,* 372 F.3d 784, 791 (6th Cir.2004) (citing *Adcock–Ladd v. Sec'y of Treasury,* 227 F.3d 343, 350 (6th Cir. 2000)). There is, however, an exception to the general rule that the prevailing market rates of the local community govern the lodestar analysis, and, in this circuit, the exception is known as the "out-of-town specialist." *See Hadix,* 65 F.3d at 535 (citation omitted); *Louisville Black Police Officers Org. v. City of Louisville*, 700 F.2d 268, 278 (6th Cir. 1983) ("District courts are free to look to a national market, an area of specialization market or any other market they believe appropriate to fairly compensate particular attorneys in individual cases."). Attorneys who specialize in particular fields tend to charge more for their services and tend to be found in larger cities where the cost of litigation is more expensive. *See Chrapliwy v. Uniroyal, Inc.,* 670 F.2d 760, 769 (7th Cir. 1982) (emphasis added). When fees are sought for an "out-of-town specialist," "courts must determine (1) whether hiring the out-of-town specialist was reasonable in the first instance, and (2) whether the rates sought by the out-of-town specialist are reasonable for an attorney of his or her degree of skill, experience, and reputation." *Hadix,* 65 F.3d at 535, citing *Chrapliwy,* 670 F.2d at 768–69.

Here it was reasonable for Plaintiffs to retain counsel from outside of the local community and to retain Werman Salas P.C. "Plaintiffs' Counsel are known and recognized lawyers in wage and hour litigation, and have an excellent national reputation in representing tipped employees in this type of case." *Osman, et al. v. Grube, Inc*., et al. No. 3:16-cv-00802-JJH, 2018 WL 2095172, at \*4 (N.D. Ohio May 4, 2018).[9] *Knox v. Jones*

---

[9]     See, e.g., *Driver v. AppleIllinois, LLC*, No. 06-cv-6149 (N.D. Ill.); *Schaefer v. Walker Bros. Enter. Inc.*; *Romero v. Top-Tier Colorado, LLC*, No. 16-1057 (10th Cir.); *Fast v. Applebee's Inter. Inc.*, Nos. 10–1725, 10–1726 (8th Cir.); *Cope v. Let's Eat Out, Inc.*, No. 6:16-cv-03050 (W.D. Mo.); *McLamb v. High 5 Hospitality*, No. 16-0039 GMS (D. Del.); *Greenwell v. R. Wings R. Wild, LLC*,

*Grp.*, No. 15-CV-1738 SEB-TAB, 2017 WL 3834929, at *5 (S.D. Ind. Aug. 31, 2017)

(describing Werman Salas P.C. "as national leaders in advocating the rights of working

people in wage and hour litigation."); *Sanchez v. Roka Akor Chicago LLC*, No. 14 C 4645,

2017 WL 1425837, at *5-7 (N.D. Ill., Apr. 20, 2017) (same); *Mouloki v. Epee,* No. 14 C

5532, 2017 WL 2791215, at * 3, n. 4, (N.D. Ill. June 27, 2017) (describing Douglas M.

Werman as a "highly respected and experienced lawyer[]" in "wage and hour cases.");

*Schmidt v. Smith & Wollensky, LLC*, 268 F.R.D. 323, 328 n.5 (N.D. Ill. 2010) (Castillo, J.)

(recognizing Mr. Werman as a "highly experienced attorney" in wage and hour class

actions); Ex. 3, Werman Decl. ¶ 21.

    As of June 21, 2018, Plaintiffs' Counsel's total lodestar fees are $354,350.85.  Ex. 2,

Werman Decl. ¶ 25; Ex. 3, Fradin Decl. ¶ 10. The following table shows the breakdown of

attorneys and paralegals who worked on this case, the amount of time recorded by each

individual, and each individual's hourly rate.

| Timekeeper | Rate | Time | Amt. Due |
|------------|------|------|----------|
| Douglas M. Werman | $675 | 157.24 | $106,137.00 |
| Steven P. Schneck | $625 | 7.99 | $4,993.75 |
| Abra Siegel | $575 | 136.04 | $78,223.00 |
| Maureen A. Salas | $525 | 3.01 | $1,580.25 |
| Michael Fradin | $450 | 200.25 | $90,112.50 |
| Zachary C. Flowerree | $430 | 38.51 | $16,559.30 |
| Sarah J. Arendt | $400 | 0.50 | $200.00 |

No. 4:15-cv-00742-DPM (E.D. Ark.); *Barnhart v. Chesapeake Bay Seafood House Assoc., LLC*, No. JFM-16-01277 (D. Md.); *Stokes v. Consol. Wings Inv., LLC*, No. 1:15-cv-01932-RLY-DKL (S.D. Ind.); *Roy v. JK&T Wings, Inc.*, No. 4:16-cv-10836-TSH (D. Mass.); *Knox v. The Jones Grp.*, No. 15-cv-1738 SEB-TAB (S.D. Ind.); *Ide v. Neighborhood Rest. Partners, LLC,* No. 1:13-cv-00509-MHC (N.D. Ga.); *Robbins v. Blazin Wings, Inc.*, No. 15-06340 (W.D.N.Y.); *Grosscup v. KPW Mgmt., Inc.*, No. 16-cv-6501 (N.D. Ill.); *Soto v. Wings R' Us Romeoville, Inc.*, No. 15-cv-10127 (N.D. Ill.); *Black v. P.F. Chang's China Bistro, Inc.*, No. 16-cv-3958 (N.D. Ill.); *Johnson v. Pinstripes, Inc.*, No. 12 C 1018 (N.D. Ill.); *Cureless v. Great Am. Real Food Fast, Inc.*, No. 3:10–cv–00279–JPG–SCW (S.D. Ill.); *Clark v. Honey Jam Café, LLC*, No. 11 C 3842 (N.D. Ill.); *Cooper v Winking Lizard, Inc.*, 1:16-cv-01513-DAP (N.D. Ohio).

| Jacqueline Villanueva | $230 | 29.51 | $6,787.30 |
| Adriana Rodriguez | $175 | 10.50 | $1,837.50 |
| Cristina Calderon | $175 | 214.66 | $37,565.50 |
| Maria Reyes | $175 | 17.17 | $3,004.75 |
| Julieta Galvez | $175 | 0.50 | $87.50 |
| Jose Maldonado | $175 | 41.50 | $7,262.50 |
| **Total** | | **857.38** | **$354,350.85** |

*Id.* Counsel's requested fee is $516,666.66 and represents a modest 1.46 multiplier of their current loadstar. Ex 2, Werman Decl. ¶ 40. This Court and others from this district have approved greater multipliers in other cases awarding a percentage of the fund, including similar wage and hour actions. *See, e.g., Castillo*, 2015 WL 13021899, at *7 (Marbley, J.) (2.5 multiplier of counsel's lodestar); *Swigart,* 2014 WL 3447947, at *6 (2.57 multiplier of counsel's lodestar).[10] And Plaintiffs' Counsel's lodestar does not take into consideration future time Plaintiffs' Counsel will spend fulfilling their obligations in the Settlement Agreement, conferring with the Settlement Administrator, monitoring the administration of settlement, and responding to Plaintiffs' and Settlement Class members' inquiries. Ex 2, Werman Decl. ¶¶ 28, 40.

### 5. Complexity of the Litigation

"Wage-and-hour collective and class actions are, by their very nature, complicated and time-consuming." *Swigart,* 2014 WL 3447947, at *7 (citation omitted). The parties faced complex motion practice, both over the merits, as well as on collective treatment.

### 6. Professional Skill and Standing of Counsel

Counsel are highly qualified and experienced and have substantial credentials in federal courts and class and collective action litigation. Ex. 2, Werman Decl. ¶ 29; Ex. 3,

---

[10]    *See also Johnson*, 2013 WL 2295880, at *6 (Marbley, J.) (2.25 multiplier of counsel's lodestar); *Lowther v. AK Steel Corp.*, 2012 WL 6676131, at *5 (S.D. Ohio Dec. 21, 2012) (3.06 multiplier).

Fradin Decl. ¶ 6; *see also* n. 9, supra; *Sanchez*, 2017 WL 1425837, at *5-7; *Mouloki,* 2017 WL 2791215, at * 3, n. 4. Mr. Werman has extensive experience representing tipped employees in wage and hour litigation.[11]

For the foregoing reasons, Plaintiffs' Counsel's requested attorney's fees of $516,666.66 should be approved.

## B.     Plaintiffs' Litigation Costs Should Be Approved

As of June 21, 2018, Plaintiffs' Counsel's costs are $12,412.27. Ex. 2, Werman Decl. ¶ 41; Ex. 3, Fradin Decl. ¶ 16. These expenses are identified in counsel's declarations. *Id.* The expenses incurred are reasonable and their reimbursement should be approved. *Swigart*, 2014 WL 3447947, at *7 (reimbursing $39,406.46 in out-of-pocket litigation expenses" that "were reasonable and necessary in connection with litigating and resolving this case and are reimbursable.").

## VII.    The Court Should Appoint a Settlement Administrator and Approve its Fee

The Court should appoint Rust Consulting, Inc. as the Settlement Administrator and approve $14,000.00 in fees for its work in administering the settlement.

---

[11]     See, e.g., *Driver v. AppleIllinois, LLC*, No. 06-cv-6149 (N.D. Ill.); *Schaefer v. Walker Bros. Enter. Inc.*; *Romero v. Top-Tier Colorado, LLC*, No. 16-1057 (10th Cir.); *Fast v. Applebee's Inter. Inc.*, Nos. 10–1725, 10–1726 (8th Cir.); *Cope v. Let's Eat Out, Inc.*, No. 6:16-cv-03050 (W.D. Mo.); *McLamb v. High 5 Hospitality*, No. 16-0039 GMS (D. Del.); *Greenwell v. R. Wings R. Wild, LLC*, No. 4:15-cv-00742-DPM (E.D. Ark.); *Barnhart v. Chesapeake Bay Seafood House Assoc., LLC*, No. JFM-16-01277 (D. Md.); *Stokes v. Consolidated Wings Investment, LLC*, No. 1:15-cv-01932-RLY-DKL (S.D. Ind.); *Roy v. JK&T Wings, Inc.*, No. 4:16-cv-10836-TSH (D. Mass.); *Knox v. The Jones Group*, No. 15-cv-1738 SEB-TAB (S.D. Ind.); *Ide v. Neighborhood Rest. Partners, LLC,* No. 1:13-cv-00509-MHC (N.D.Ga.); *Robbins v. Blazin Wings, Inc.*, No. 15-06340 (W.D.N.Y.); *Grosscup v. KPW Mgmt., Inc.*, No. 16-cv-6501 (N.D. Ill.); *Soto v. Wings R' Us Romeoville, Inc.*, No. 15-cv-10127 (N.D. Ill.); *Black v. P.F. Chang's China Bistro, Inc.*, No. 16-cv-3958 (N.D. Ill.); *Johnson v. Pinstripes, Inc.*, No. 12 C 1018 (N.D. Ill.); *Cureless v. Great Am. Real Food Fast, Inc.*, No. 3:10–cv–00279–JPG–SCW (S.D. Ill.); *Clark v. Honey Jam Café, LLC*, No. 11 C 3842 (N.D. Ill.); *Cooper v Winking Lizard, Inc.*, 1:16-cv-01513-DAP (N.D. Ohio).

## VIII.  CONCLUSION

For the foregoing reasons, the Court should approve the Settlement.

Respectfully submitted,

/s/Douglas M. Werman
One of Plaintiffs' Counsel