**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| ZACHARY BARTON, *et al.*, : | |
| : | Case No. 2:17-CV-476 |
| Plaintiffs, : | |
| : | JUDGE ALGENON L. MARBLEY |
| v. : | |
| : | Magistrate Judge Deavers |
| LANCASTER WINGS, INC., *et al.*, : | |
| : | |
| Defendants. : | |

**ORDER APPROVING SETTLEMENT**

This matter is before the Court on Plaintiffs' Unopposed Motion for Approval of Settlement, Appointment of Settlement Administrator, and Approval of Service Awards, and Attorneys' Fees and Costs ("Motion for Settlement Approval"). (ECF No. 74). For good cause shown, the Court **GRANTS** the Motion for Settlement Approval.

1. The Court approves the $1,550,000 collective action settlement and incorporates by reference all of the definitions contained in the Joint Stipulation of Settlement. The Court shall approve a Fair Labor Standards Act ("FLSA") collective action settlement if it was reached as a result of contested litigation and it is a fair and reasonable resolution of a bona fide dispute between the parties. *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1352-54 (11th Cir. 1982) (citing *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945)); *Filby v. Windsor Mold USA, Inc.*, 2015 WL 1119732, at *3 (N.D. Ohio March 11, 2015); *Kritzer v. Safelite Solutions*, LLC, 2012 WL 1945144, at *5 (S.D. Ohio May 30, 2012).

2. Here, the settlement meets the standard for approval. First, the settlement was the result of vigorously contested litigation. The case was actively litigated by both parties and was only resolved with the assistance of a neutral mediator.

1

3. The second prong of the Court's settlement approval inquiry, whether the settlement is a fair and reasonable resolution of a bona fide dispute between the parties, is also satisfied.

4. To determine whether a settlement is "fair and reasonable," courts often analyze the following factors: (1) whether the parties fairly and honestly negotiated the settlement; (2) if serious questions of law and fact existed that placed the ultimate outcome of the litigation in doubt; (3) does the value of immediate settlement outweigh the mere possibility of future relief after protracted litigation; and (4) in the judgment of the parties, is the settlement fair and reasonable. *Cannon v. Time Warner NY Cable LLC*, 2015 WL 4498808 (D. Colo. July 24, 2015). Each of these factors is satisfied.

5. The Court also concludes that a bona fide dispute existed between the parties. Defendants denied the material allegations of Plaintiffs' claims and any violation of the FLSA, and they vigorously defended their position throughout the litigation. The duration and complexity of the litigation undermines the notion that the settlement is a product of collusion, or "that the one entity with a bird's eye view of the proceedings—the district court judge—somehow missed the signs that the parties were merely engaged in pretense and posturing." *See Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 351 (6th Cir. 2009).

6. A one-step settlement approval process in FLSA collective actions without Rule 23 classes is appropriate. *See, e.g., Cooper v. Winking Lizard, Inc.*, Case 2017 WL 4465759, at *1 (N.D. Ohio Oct. 4, 2017). Collective actions under 29 U.S.C. § 216(b) require workers to affirmatively opt-in to the litigation, unlike in a Federal Rule of Civil Procedure 23 class action. *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1529 (2013) ("Rule 23 actions are fundamentally different from collective actions under the FLSA."). Because the failure to opt in to an FLSA lawsuit does not prevent potential members of the collective from bringing their own

suits in the future, FLSA collective actions do not implicate the same due process concerns as do Rule 23 actions. *Woods v. N.Y. Life Ins. Co.*, 686 F.2d 578, 579-80 (7th Cir. 1982) (discussing due process concerns present in Rule 23 class action that are not present in FLSA collective actions).

7. Service or incentive awards serve the important purpose of compensating plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs. "Numerous courts have authorized incentive awards [as] efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003); *accord Dillworth v. Case Farms Processing, Inc.*, 2010 WL 776933, at *7 (N.D. Ohio March 8, 2010); *see also Sand v. Greenberg*, 2011 WL 784602, at *3 (S.D.N.Y. Oct. 6, 2011) (approving award in FLSA case because plaintiffs "took risks by putting their names on this lawsuit," including that of "blacklisting").

8. Here, the two Named Plaintiffs as well as six Opt-in Plaintiffs who provided declarations – Christopher Cannon, Danielle Thorp, Kayla Whitcraft, Kristen Winchers, Mary Katherine Mullen, and Tyler Thorp – actively participated in the litigation and satisfy these factors. First, the Named Plaintiffs provided the factual basis for the lawsuit, reviewed the complaint, provided declarations, attended the mediation, and took substantial actions to protect the interests of potential collective action members. Likewise, the six Opt-in Plaintiffs provided declarations and assisted in the factual development of the case. Second, the Named Plaintiffs undertook a substantial direct and indirect risk by agreeing to file this collective action lawsuit in their own names. Third, the Named Plaintiffs spent a significant amount of time and effort in pursuing this litigation on behalf of the Eligible Settlement Class Members.

9. For the foregoing reasons, a Service Award of $5,000.00 each are approved for Named Plaintiffs Barton and Forness and Service Awards of $500.00 each are approved for Opt-in Plaintiffs Christopher Cannon, Danielle Thorp, Kayla Whitcraft, Kristen Winchers, Mary Katherine Mullen, and Tyler Thorp.

10. Plaintiffs' Counsel seek as their attorney's fees one-third of the common settlement fund. There are two methods for determining whether a fee is reasonable: the lodestar method and the percentage-of-the-fund method. *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App' 496, 498 (6th Cir. 2011). The Sixth Circuit has approved both methods. *Rawlings v. Prudential-Bache Prop., Inc.*, 9 F.3d 513, 515–16 (6th Cir. 1993).

11. The Court analyzes the following factors in determining whether the fee is reasonable: (1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent-fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides. *Castillo v. Morales*, Case: 2:17-cv-00476-ALM-EPD2015 WL 13021899, at *6 (S.D. Ohio Dec. 22, 2015).

12. The Settlement provides that all Eligible Settlement Class Members will receive direct cash payments representing a substantial recovery on their unpaid wage claims. There is no initial claims process that could dramatically decrease participation in the settlement. Moreover, "the settlement provides relatively early relief to [collective action] members, and it eliminates the additional risks the parties would otherwise bear if this litigation were to continue. Absent settlement, the parties would have engaged in discovery from individual opt-in plaintiffs, of electronically-stored information, and a potential motion to decertifiy the collective, and

dispositive motions on merits and damages issues." *Swigart*, 2014 WL 3447947, at *6. Instead of the risks of continued litigation, the gross Settlement provides Eligible Settlement Class Members 57% of their alleged owed wages, which is above the average recovery in FLSA lawsuits. *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 WL 776933, at *8 (N.D. Ohio March 8, 2010) (finding that a recovery of one-third of the owed wages for class members, before deducting attorney's fees and costs, is "well above" average).

13. Plaintiffs' Counsel undertook the representation on a purely contingent basis. Thus, Counsel has borne the risk that accompanies contingent-fee representation, including the prospect that the investment of substantial attorney time and resources would be lost. Counsel should be compensated for this risk. *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 796 (N.D. Ohio 2010); *see also Crosby v. Bowarter Inc. Ret. Plan*, 262 F. Supp. 2d 804, 814 (W.D. Mich. 2003) ("contingency serves to justify the higher fee"). "There is a public interest in ensuring that attorneys willing to represent clients in class action litigation are adequately paid so that they and others like them will continue to take on such cases." *Connectivity Sys. Inc. v. Nat'l City Bank*, 2011 WL 292008, at *14 (S.D. Ohio Jan. 25, 2011).

14. The lodestar figure may be used to confirm the reasonableness of the percentage-of-the-fund award. *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996).

15. In the Memorandum of Law, Plaintiffs' Counsel provided the Court a summary of the billable time (and reasonable hourly rates), that they incurred in litigating this FLSA collective action.

16. Plaintiffs' Counsel's lodestar calculations contemplate fees accrued through June 21, 2018 and do not account for the time Plaintiffs' Counsel will expend fulfilling their obligations in the Settlement, monitoring the administration of the Settlement, and responding to Eligible

Settlement Class Members' inquiries.

17. Based on the materials submitted by Plaintiffs' Counsel, the Court concludes that the total of 857.38 hours that Plaintiffs' Counsel expended on the litigation is reasonable.

18. Under the lodestar method, for purposes of determining a reasonable attorney's fee, the hourly rate must be calculated in accordance with the prevailing market rate in the relevant community. *Blum v. Stenson*, 465 U.S. 896, 895 (1984).

19. Generally, the "prevailing market rate [is] defined as the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir.2004) (citing *Adcock–Ladd v. Secretary of Treasury*, 227 F.3d 343, 350 (6th Cir.2000)). There is, however, an exception to the general rule that the prevailing market rates of the local community govern the lodestar analysis, and, in this circuit, the exception is known as the "out-of-town specialist." *See Hadix v. Johnson*, 65 F.3d 532, 535 (6th Cir.1995) (citing *Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760, 768–69 (7th Cir.1982)); *Louisville Black Police Officers Org. v. City of Louisville*, 700 F.2d 268, 278 (6th Cir. 1983) ("District courts are free to look to a national market, an area of specialization market or any other market they believe appropriate to fairly compensate particular attorneys in individual cases."). Attorneys who specialize in particular fields tend to charge more for their services and tend to be found in larger cities where the cost of litigation is more expensive. See *Chrapliwy*, 670 F.2d at 769 (emphasis added). When fees are sought for an "out-of-town specialist," "courts must determine (1) whether hiring the out-of-town specialist was reasonable in the first instance, and (2) whether the rates sought by the out-of-town specialist are reasonable for an attorney of his or her degree of skill, experience, and reputation." *Hadix*, 65 F.3d at 535 (citing *Chrapliwy*, 670 F.2d at 768–69). Here, it was reasonable for Plaintiffs to retain counsel from outside of the local

6

community.

20. Plaintiffs' Counsel's lodestar amount in this case is $354,350.85.

21. In light of the above analysis, an approximate 1.31 multiplier of the lodestar is reasonable, and it is therefore reasonable to award thirty percent of the $1,550,000 Settlement fund (or $465,000.00) in fees.

22. Plaintiffs' Counsel's request for reimbursement of $12,412.27 in actual out-of-pocket expenses incurred in prosecuting this case, including filing fees, pro hac vice fees, postage, travel expenses, mediation fees, and copying costs. The Court finds these costs to be reasonably incurred.

23. The Court also approves the appointment of Rust Consulting to administer the settlement and approves $14,000.00 for its fees in administering the Settlement.

24. The Court orders that this case be **DISMISSED WITHOUT PREJUDICE.** The dismissal without prejudice will convert to a dismissal with prejudice without further action of the Court 210 days after the entry of this Order on the docket.

25. The Court will retain jurisdiction over this action only for the purposes of supervising the implementation, enforcement, construction, administration, and interpretation of the Joint Stipulation, including for overseeing the distribution of settlement funds.

26. The parties shall abide by all terms of the Joint Stipulation of Settlement, which are incorporated herein, and this Order.

**IT IS SO ORDERED.**

          s/ Algenon L. Marbley
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED:  August 24, 2018**